# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **MARYLYN MARIE WOODS,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:17-00452-N** |
| | ) | |
| **NANCY A. BERRYHILL,** *Acting* | ) | |
| *Commissioner of Social Security*,[1] | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Marylyn Marie Woods brought this action under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*. Upon consideration of the parties' briefs (Docs. 11, 12) and those portions of the administrative record (Doc. 10) (hereinafter cited as "(R. [page number(s) in lower-right corner of transcript])") relevant to the issues raised, the Court finds that the Commissioner's final decision is due to be **REVERSED** and **REMANDED** to the Commissioner under sentence four of § 405(g) for further

---

[1] As the Plaintiff notes, on March 6, 2018, the U.S. Government Accountability Office determined that, under the Federal Vacancies Reform Act of 1998, Nancy Berryhill "was not authorized to continue serving using the title of Acting Commissioner[ of Social Security] after November 16[,]" 2017. *See* https://www.gao.gov/products/D18772#mt=e-report (last visited Oct. 10, 2018). However, appropriate action has apparently since been taken to permit Berryhill to again serve under the title of Acting Commissioner. *See* https://www.ssa.gov/agency/commissioner.html (last visited Oct. 10, 2018); https://www.ssa.gov/org/coss.htm (last visited Oct. 10, 2018).

administrative proceedings.[2]

## I.    *Background*

On April 16, 2015, Woods filed an application for a period of disability and

DIB with the Social Security Administration ("SSA"), alleging disability beginning

April 10, 2015.[3]  After her application was initially denied, Woods requested a

hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of

Disability Adjudication and Review, which was held on December 5, 2016.  On May

12, 2017, the ALJ issued an unfavorable decision on Woods's application, finding

her not disabled under the Social Security Act and thus not entitled to benefits.

(*See* R. 10 – 25).

The Commissioner's decision on Woods's application became final when the

Appeals Council for the Office of Disability Adjudication and Review denied her

request for review of the ALJ's decision on August 11, 2017.  (R. 1 – 6).  Woods

subsequently filed this action under § 405(g) for judicial review of the

Commissioner's final decision.  *See* 42 U.S.C. § 405(g) ("Any individual, after any

---

[2] With the consent of the parties, the Court has designated the undersigned
Magistrate Judge to conduct all proceedings and order the entry of judgment in this
civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure
73, and S.D. Ala. GenLR 73.  (*See* Docs. 16, 17).  The parties jointly waived the
opportunity for oral argument.  (*See* Docs. 15, 18).

[3] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the
payment of insurance benefits to persons who have contributed to the program and
who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1)(D) (1982 ed.,
Supp. III)."  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  "For DIB claims, a
claimant is eligible for benefits where she demonstrates disability on or before the
last date for which she were insured."  *Moore v. Barnhart*, 405 F.3d 1208, 1211
(11th Cir. 2005) (per curiam) (citing 42 U.S.C. § 423(a)(1)(A) (2005)).

final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.     *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards.  Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' "  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))).  However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))).  " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' "  *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894

F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [The Court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[4] "In determining whether substantial evidence exists, [a

---

[4] Nevertheless, "[m]aking district courts dig through volumes of documents and transcripts would shift the burden of sifting from petitioners to the courts. With a typically heavy caseload and always limited resources, a district court cannot be expected to do a petitioner's work for him." *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings). "[D]istrict court judges are not required to ferret out delectable facts buried in a massive record," *id.*, and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). Generally, claims of error not raised in the district court are deemed waived. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford*, 363 F.3d at 1161 (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of

court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). *See also McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) ("We are constrained to conclude that the administrative agency here…reached the result that it did by focusing upon one aspect of the evidence and ignoring other parts of the record. In such circumstances we cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence. The review must take into account and evaluate the record as a whole.").

However, the "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g., Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ….' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential

---

a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal).

standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). "'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).").

> Eligibility for DIB…requires that the claimant be disabled. 42 U.S.C. §[] 423(a)(1)(E)…A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. §[] 423(d)(1)(A)…

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. 2015) (per curiam) (unpublished).[5]

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[6]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the

---

[5] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[6] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v.*

*Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

When the ALJ denies benefits and the Appeals Council denies review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

### III.   *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Woods met the applicable insured status requirements through December 31, 2020, and that she had not engaged in substantial gainful activity since April 10, 2015, the alleged disability onset date. (R. 15). At Step Two, the ALJ determined that Woods had the following severe impairments: cervical degenerative disc disease; lumbar degenerative disc disease, status post fusion; digestive disorders; migraine; and vision loss. (R. 15 – 17). At Step Three, the ALJ found that Woods did not have an impairment or combination of impairments that met or equaled the severity of one of the specified impairments in the relevant Listing of Impairments. (R. 18).

At Step Four,

the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

The ALJ determined that Woods had the RFC "to perform light work as defined in 20 CFR 404.1567(b)[,]"[7] subject to the following: Woods "should do no climbing of ladders, ropes or scaffolds[;] could occasionally climb ramps and stairs and occasionally stoop, crouch, and crawl[;] would require no exposure to unprotected heights or hazardous machinery[;] cannot perform work tasks requiring

[7] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. *See also* 20 C.F.R. § 404.1567.

normal visual field or depth perception[; and] cannot perform commercial driving[, but] does have adequate vision for reading normal print, viewing a computer monitor, and handling small objects." (R. 19 – 24).

After considering the testimony of a vocational expert, the ALJ then determined that Woods was capable of performing past relevant work as a surgical technician and anesthesia scheduler. (R. 24 – 25). Accordingly, the ALJ did not proceed to Step Five and determined that Woods was not disabled under the Social Security Act during the relevant adjudicatory period. (R. 25).

## IV.   *Analysis*

### A.   New Evidence to Appeals Council

In one of her four assignments of reversible error, Woods claims that the Appeals Council failed to properly consider new evidence she presented to it in requesting review of the ALJ's decision.

> "With a few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process," including before the Appeals Council. *Ingram v. Comm'r of Soc., Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007). The Appeals Council has the discretion not to review the ALJ's denial of benefits. *See* 20 C.F.R. § 416.1470(b). But the Appeals Council "must consider new, material, and chronologically relevant evidence" that the claimant submits. *Ingram,* 496 F.3d at 1261; *see also* 20 C.F.R. §§ 404.970(b), 416.1470(b).

*Washington v. Soc. Sec. Admin., Com'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) (per curiam).

In its order denying Woods's request for review of the ALJ's decision, the Appeals Council explained that the additional evidence she submitted to it –

"medical evidence from Mobile Infirmary Medical Center dated March 15, 2017 to March 21, 2017 (11 pages), the medical records from the Orthopaedic Group P.C./Todd Volkman, M.D. dated March 15, 2017 to July 5, 2017 (19 pages), and the medical records from Steven Orleans, M.D. dated December 20, 2016 (4 pages)" (R. 2) – "does not show a reasonable probability that it would change the outcome of the decision" (i.e., that the new evidence was not "material"[8]); therefore, the Appeals Council "did not consider and exhibit this evidence." (R. 2). When, as here, " 'the Appeals Council refuses to consider new evidence submitted to it and denies review, that decision is ... subject to judicial review....' " *Washington*, 806 F.3d at 1320 (quoting *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). "[W]hether evidence meets the new, material, and chronologically relevant standard is a question of law subject to our *de novo* review." *Id.* at 1321 (quotation omitted). Therefore, "when the Appeals Council erroneously refuses to consider evidence, it commits legal error and remand is appropriate." *Id.*[9]

---

[8] *See Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987) (evidence is "material" when it is "relevant and probative so that there is a reasonable possibility that it would change the administrative result").

[9]     The case law relied on by both Woods and the Commissioner in briefing this claim is inapposite. As in *Washington*, "[t]his is not a case in which the Appeals Council considered the additional evidence and then denied review. When the Appeals Council accepts additional evidence, considers the evidence, and then denies review, it is not 'required to provide a detailed rational for denying review.' *Mitchell v. Comm'r, Soc., Sec. Admin.*, 771 F.3d 780, 784 (11th Cir. 2014). But we are addressing a different issue in this case: whether the Appeals Council committed legal error when it refused to consider the claimant's additional evidence." 806 F.3d at 1321 n.5.

     The undersigned is of the opinion that *Mitchell*'s rule that the Appeals Council need not provide a detailed rational for denying review after accepting and

Woods asserts, and the Commissioner does not dispute, that the medical records the Appeals Council refused to consider document "anterior cervical discectomy and fusion at the C4-5 and C5-6 levels, with instrumentation, by Dr. Volkman at Mobile Infirmary." (Doc. 11 at 15. *See also* Doc. 12 at 11 ("The evidence on which Plaintiff bases her argument consists of a report of Plaintiff's March 2017 cervical surgery as well as treatment notes, some of which post-date the ALJ's decision (Tr. Plaintiff's Brief at 15; Tr. 36-46).")). Woods claims that these records "documenting [her] need for surgery, and having a two-level cervical fusion, clearly document physical problems which would reasonably be expected to impact [her] ability to engage in work at the 'light' level of physical exertion." (Doc. 11 at 15). However, as the Commissioner's brief correctly points out, the ALJ was already aware that Woods was scheduled for the March 2017 cervical fusion surgery at the time the ALJ issued her decision. Specifically, the ALJ cited to and discussed notes from a February 10, 2017 examination with Dr. Volkman (*see* R. 23 (citing SSA Ex. 22F)), at which Woods said she was "pretty miserable" due to "persistent symptoms in her neck, right shoulder and right arm[,]" and informed Dr. Volkman

_____

considering new evidence also applies to denials for review after refusing to consider additional evidence. Because judicial review of such a refusal is *de novo*, the Court owes no deference to the Appeals Council's factual or legal determinations underlying the refusal. Therefore, Woods's suggestion that the Appeals Council should be required, as an additional matter of law, to provide a detailed explanation for its refusal makes little practical sense. *Cf. Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986) ("This court has held that when determining whether to remand a case to the Secretary for consideration of new evidence, the mere statement by the Secretary that the new evidence would not ultimately change the decision cannot be accorded any weight since the statement concerning the materiality of the evidence not in the certified administrative record is advisory at best. (citing *Cherry v. Heckler,* 760 F.2d 1186, 1194 (11th Cir. 1985)).

that she "want[ed] to proceed with a "decompression and stabilization" operation. (R. 531). Three days later, Dr. Volkman issued "Routine Surgery Orders" for an "ACDF C4-5, 5-6, C-ARM" procedure. (R. 529). Thus, mere evidence that Woods actually went through with the surgery was cumulative and therefore not "new" evidence the Appeals Council was required to consider. *Washington*, 806 F.3d at 1321 n.6 ("[C]umulative evidence is not new…" (citing *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir.1986)). Accordingly, the Appeals Council did not err in declining to consider it, and the Court **OVERRULES** Woods's assignment of error regarding the evidence presented to the Appeals Council.

## B.    Mental Impairments

Woods also claims that the ALJ reversibly erred in failing to include any mental limitations in the RFC, asserting that the ALJ would have limited Woods to no more than unskilled work if she had properly considered evidence regarding the severity of Woods's mental impairments, thus preventing Woods from performing the two past jobs the ALJ found she could perform at Step Four. Upon consideration, the undersigned finds that the ALJ failed to adequately explain how she accounted for Woods's mental impairments at Step Four.

At Step Two, the ALJ determined that Woods had the "medically determinable mental impairments of depression and anxiety," but that those impairments were "non-severe" because, "considered singly and in combination, [they] do not cause more than minimal limitation in [Woods]'s ability to perform basic mental work activities…" (R. 15). In making this determination, the ALJ

weighed the medical opinions of consultative examining psychologist Dr. Pamela Starkey and non-examining state agency reviewing physician Dr. Robert Estock, giving more weight to Dr. Starkey's opinion assessing only mild mental limitations because it was "most consistent with the record as a whole." (R. 16).[10] The ALJ then performed the "special technique" for evaluating the severity of mental impairments set out in 20 C.F.R. § 404.1520a, known as the Psychiatric Review Technique ("PRTF" or "PRT"), assessing mild limitations in all four functional areas of the technique. *See* (R. 16 – 17); *Moore*, 405 F.3d at 1213 ("Agency regulations require the ALJ to use the 'special technique' dictated by the PRTF for evaluating mental impairments. 20 C.F.R. § 404.1520a-(a). This technique requires separate evaluations on a four-point scale of how the claimant's mental impairment impacts four functional areas: 'activities of daily living; social functioning; concentration,

---

[10] The undersigned disagrees with Woods that the ALJ committed reversible error in giving little weight to the part of Dr. Estock's opinion assessing moderate limitations in concentration, persistence, or pace, and in giving greater weight to Dr. Starkey's opinion. An ALJ is not required to afford special deference to the opinions of non-treating physicians such as Dr. Estock, *see McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam), and an "ALJ may reject any medical opinion if the evidence supports a contrary finding." *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) (per curiam). As the ALJ noted, Dr. Estock's opinion was inconsistent with Dr. Starkey's assessment of only mild limitations; generally, "[t]he opinions of nonexamining, reviewing physicians,…when contrary to those of the examining physicians, are entitled to little weight…" *Id.* Contrary to Woods's assertion that "the ALJ's decision does not point to any specific medical evidence that contradicts the findings and opinions of Dr. Estock" (Doc. 11 at 14), the ALJ also cited evidence of Woods's denials of "depression and anxiety on multiple occasions to her treating physicians[,]" and noted that she "receives minimal conservative treatment" for those impairments. (R. 16). Accordingly, the ALJ sufficiently stated the weight given to Dr. Estock's opinion and the reasons therefore, *see Winschel*, 631 F.3d at 1179, and substantial evidence supports that decision.

persistence, or pace; and episodes of decompensation.' 20 C.F.R. § 404.1520a–(c)(3–4).").

The Social Security regulations make clear that the PRT is used to evaluate whether mental impairments are "severe." *See* 20 C.F.R. § 404.1520a(d) ("After we rate the degree of functional limitation resulting from your impairment(s), we will determine the severity of your mental impairment(s)."). However, "[a]t step three the ALJ must determine if the applicant has a severe impairment or a combination of impairments, whether severe or not, that qualify as a disability. The ALJ must consider the applicant's medical condition taken as a whole." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987).[11] "Likewise, the ALJ must consider the applicant's entire medical condition in determining whether the applicant can return to her past work (step four), and if not, whether the applicant can perform other work available in the national economy (step five)." *Jamison*, 814 F.2d at 588. *See also* 20 C.F.R. § 404.1545(a)(2) (in assessing an RFC, the ALJ must "consider all of [a claimant's] medically determinable impairments of which [the ALJ is] aware, including…medically determinable impairments that are not 'severe' "). As the ALJ herself noted, the PRT is "not a residual functional capacity assessment[, and t]he

---

[11] At Step Three, the ALJ stated that Woods "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1…" (R. 18). The ALJ also stated that, in making this finding, she had "given consideration" to, *inter alia*, "listing…12.04, and 12.00 et seq.," which are relevant listings for mental disorders. Under this Circuit's precedent, that was sufficient to show that the ALJ had considered Woods's medically determinable mental impairments at Step Three. *See Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002) (per curiam).

mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments…" (R. 17 (citing Social Security Ruling 96-8p)). Nevertheless, the ALJ immediately thereafter appeared to contradict her own observation and equate the PRT with a mental RFC assessment by stating: "Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the []mental function analysis." (*Id.*).

As Woods correctly notes, the RFC contains no mental limitations on Woods's ability "to perform light work as defined in 20 CFR 404.1567(b)."[12] The ALJ made no further mention of the opinions of Dr. Starkey or Dr. Estock after Step Two, nor did she discuss any other evidence of Woods's mental impairments at Step Four. While the ALJ indicated at Step Two that the record evidence was indicative of only "mild" mental limitations, she made no attempt to explain how these mild limitations factored into the RFC at Step Four. Indeed, the only time the ALJ even mentioned Woods's medically determinable mental impairments of anxiety and

_____

[12] The regulation's definition of "light work" itself imposes no mental limitations. 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.").

depression at Step Four was in noting, while considering Woods's subjective testimony, that she was taking medication for these impairments and that they "were related to her digestive symptoms, flatulence, and the embarrassment it causes…" (R. 20).[13]

As such, the Court is "unable from the ALJ's opinion in this case to determine if at [Step Four s]he considered [Woods]'s entire medical condition." *Jamison*, 814 F.2d at 588. As the Eleventh Circuit has explained:

> Where we cannot determine from the ALJ's opinion whether the ALJ applied the statutory requirements and the [Commissioner]'s regulations as construed by this circuit, we cannot effectively perform our duty to ensure that the proper regulatory requirements were in fact applied. We do not require that ALJs necessarily cite to particular regulations or cases; nor do we require the use of particular phrases or formulations. But in order to make our review meaningful, we must be able to determine what statutory and regulatory requirements the ALJ did in fact apply—where we cannot do that we must vacate and require a remand to the [Commissioner] for clarification.

*Id.* at 588-89.

Accordingly, the Court **SUSTAINS** Woods's claim that the ALJ reversibly erred in her consideration of Woods's mental impairments, and finds that the Commissioner's final decision denying Woods a period of disability and DIB is due

---

[13] The Eleventh Circuit has recognized that, "[t]hough the PRT and RFC evaluations are undeniably distinct, nothing precludes the ALJ from considering the results of the former in his determination of the latter." *Winschel*, 631 F.3d at 1180 (citations omitted) (citing *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004) ("While [Social Security Ruling] 96–8p does state that the [PRT] findings are 'not an RFC assessment' and that step four requires a 'more detailed assessment,' it does not follow that the findings on the [PRT] play no role in steps four and five, and [Social Security Ruling] 96–8p contains no such prohibition.")). Here, however, the ALJ's reasoning indicates that she used the PRT as a substitute for a mental RFC assessment, rather than simply considering its results as part of the overall RFC assessment.

to be **REVERSED** and **REMANDED** to the Commissioner under sentence four of § 405(g) for further administrative proceedings consistent with this decision.[14]

## V.    *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Woods's application for a period of disability and DIB filed April 16, 2015, is **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89 (1991), for further proceedings consistent with this decision.  This remand under sentence four of § 405(g) makes Woods a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *see Shalala v. Schaefer*, 509 U.S. 292 (1993), and terminates this Court's jurisdiction over this matter.

Under Federal Rule of Civil Procedure 54(d)(2)(B), should Woods be awarded Social Security benefits on the subject application following this remand, the Court hereby grants Woods's counsel an extension of time in which to file a motion for fees under 42 U.S.C. § 406(b) until thirty days after the date of receipt of a notice of award of benefits from the SSA.[15]  Consistent with 20 C.F.R. § 422.210(c), "the date

---

[14] The undersigned has also considered Woods's other two assignments of error – that the ALJ "erred in failing to develop the record by obtaining better information regarding the extent of Ms. Wood's visual impairment," and by finding her subjective testimony of pain to be not entirely credibly – but declines to address them in light of the remand already being ordered on the grounds discussed.  In ordering remand for further proceedings, the undersigned expresses no opinion on how Woods's mental impairments should ultimately factor into the RFC.

[15] *See Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1277 (11th Cir. 2006) (per curiam) ("Fed. R. Civ. P. 54(d)(2) applies to a § 406(b) attorney's fee claim."); *Blitch v. Astrue*, 261 F. App'x 241, 242 n.1 (11th Cir. 2008) (per curiam) (unpublished) ("In

of receipt of notice … shall be presumed to be 5 days after the date of such notice, unless there is a reasonable showing to the contrary." If multiple award notices are issued, the time for filing a § 406(b) fee motion shall run from the date of receipt of the latest-dated notice.

Final judgment shall issue separately in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 11th day of October 2018.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

*Bergen v. Comm'r of Soc. Sec.,* 454 F.3d 1273 (11th Cir. 2006), we suggested the best practice for avoiding confusion about the integration of Fed. R. Civ. P. 54(d)(2)(B) into the procedural framework of a fee award under 42 U.S.C. § 406 is for a plaintiff to request and the district court to include in the remand judgment a statement that attorneys fees may be applied for within a specified time after the determination of the plaintiff's past due benefits by the Commission. 454 F.3d at 1278 n.2.").